[630 NYS2d 706]

In the Matter of FRANK D. SCHARF (Admitted as FRANK DAVID SCHARF), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 27, 1995

**APPEARANCES OF COUNSEL**

*Sherry K. Cohen* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*John G. Bonomi* for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent, Frank D. Scharf, was admitted to the practice of law in the State of New York by the Second Judicial Department on March 31, 1954. At all times relevant herein respondent has maintained an office for the practice of law within the First Judicial Department.

By petition dated December 1, 1994, the Departmental Disciplinary Committee seeks an order confirming the Hearing Panel's findings of fact and conclusions of law and imposition of a sanction of no less than nine months' suspension.

Respondent's cross motion dated December 21, 1994 seeks an order, *inter alia,* (1) disaffirming in part the factual findings of the Hearing Panel's report; (2) disaffirming in part the substantive findings of the report, particularly those portions of sustained Charge Six which relate to respondent's affirmative misrepresentations to staff counsel and alleged noncooperation with the Committee; and (3) disaffirming the Panel's recommendation that respondent be suspended for nine months, imposing instead a sanction of either public censure or suspension for six months or less.

On or about December 10, 1993, respondent was served with a notice and statement of charges which alleged that he engaged in serious professional misconduct by: (1) neglecting a legal matter entrusted to him, the administration of his clients' profit-sharing plan, in violation of Code of Professional Responsibility DR 6-101 (A) (3) (22 NYCRR 1200.30); (2) intentionally failing to carry out a contract of employment, in violation of DR 7-101 (A) (2) (22 NYCRR 1200.32), and intentionally prejudicing or damaging his clients during the course of the professional relationship, in violation of DR 7-101 (A) (3) (22 NYCRR 1200.32); (3) falsely stating to his clients that he would produce copies of tax forms (5500s) for 1989, 1990 and 1991 for their profit-sharing plans in a timely manner and by failing to inform his clients that he had not prepared or filed such documents, thereby engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4) (22 NYCRR 1200.3), and in conduct that adversely reflects on his fitness to practice, in violation of DR 1-102 (A) (7) (now [8]) (22 NYCRR 1200.3); (4) falsely advising the Committee that he would produce copies of the 1989, 1990 and 1991 5500s for the profit-sharing plans in a timely manner and by failing to inform the Committee that he had not

prepared and filed such documents, thereby engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4) (22 NYCRR 1200.3), and in conduct that adversely reflects on his fitness to practice, in violation of DR 1-102 (A) (7) (now [8]) (22 NYCRR 1200.3); (5) intentionally and falsely acknowledging the signatures of his clients in connection with their execution of the profit-sharing agreements, thereby engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4) (22 NYCRR 1200.3), and in conduct which adversely reflects on his fitness to practice, in violation of DR 1-102 (A) (7) (now [8]) (22 NYCRR 1200.3); (6) repeatedly failing to produce documents and information requested by the Committee in a timely manner and by making affirmative misrepresentations and omissions of fact to the Committee in an effort to thwart discovery of his neglect of clients' legal matters, thereby engaging in conduct prejudicial to the administration of justice, in violation of DR 1-102 (A) (5) (22 NYCRR 1200.3), and conduct that adversely reflects on his fitness to practice, in violation of DR 1-102 (A) (7) (now [8]) (22 NYCRR 1200.3).

On or about February 1, 1994, respondent served an answer in which he admitted the factual allegations of neglect but denied the remaining allegations in the charges.

A Hearing Panel convened to hear testimony and receive evidence relating to the charges and to sanctions on May 26, 1994, June 9, 1994, and June 30, 1994. Staff counsel for the Disciplinary Committee called Robert J. Michalski as a witness. Respondent testified on his own behalf and also presented evidence in mitigation through the testimony of his psychiatrist, Dr. Harold Bronheim, and called three character witnesses. During the hearing the following facts emerged.

In 1982, respondent, who is also a certified public accountant, was retained by two Connecticut orthopedic surgeons, Dr. David B. Kalayjian and Dr. Robert Geist, to establish pension plans for themselves and their employees. He prepared a "Defined Benefit Pension Plan" for each of the doctors and these agreements were executed on or about June 28, 1982.

From 1982 to 1988, respondent was the administrator of the pension plans. His duties included, *inter alia,* providing advice and answering questions about the plans; gathering financial information; preparing annual reports on Forms 5500 *et seq.* for the Internal Revenue Service (IRS) and the Department of

Labor; filing the 5500s with the IRS; preparing administrative reports; and keeping proper records.

In 1988, after discussions with respondent, the doctors decided to terminate the pension plans and convert them to profit-sharing plans. Respondent agreed to prepare the necessary agreements to do so. In 1989, respondent prepared a restatement of the 1988 profit-sharing agreements which resulted in the conversion of the two plans into one profit-sharing plan, the 1989 Profit-Sharing Plan.

As in the case of the pension plans, respondent was responsible for the administration of the 1988 Profit-Sharing Agreements and the 1989 Profit-Sharing Plan. His duties were the same as those when he administered the pension plans.

The 1988 Profit-Sharing Agreements prepared by respondent bear an execution date of February 3, 1988. The signature pages indicate that the doctors signed their names in the presence of respondent on the date indicated. The 1989 Profit-Sharing Plan prepared by respondent bears an execution date of March 1, 1989. The signature page indicates that the doctors signed their names in the presence of respondent on the date indicated. In fact, in both instances, respondent's clients did not sign their names in his presence and his acknowledgment was false. In an effort to expedite the execution of the agreements, respondent first advised the doctors of the contents of the agreements and obtained their approval. Then he mailed the doctors blank signature pages which they signed on an unspecified date, having been advised that those signature pages would be attached to the agreements at a later date. Respondent alleged that he had no intent to defraud by executing the false acknowledgments.

In early summer 1992, the doctors decided to transfer responsibility for the administration of the profit-sharing plans from respondent to Robert Michalski and took steps to effectuate such transfer. Unbeknownst to the doctors, respondent had failed to prepare and file the Form 5500s for the profit-sharing plans and to prepare the required administrative report for distribution to the participants in the profit-sharing plans since 1988.

A series of written and telephonic requests by the doctors and Mr. Michalski followed over the next six months or so seeking copies of the current profit-sharing plans, and the administrative reports and the Form 5500s for 1989, 1990, and 1991. Respondent repeatedly promised to provide the records

requested, told them he had filed an extension for the 1992 Form 5500, but never informed the doctors or Mr. Michalski that he had not filed the Form 5500s.

In early December 1992, after warning respondent that he would do so, Dr. Kalayjian filed a complaint against respondent with the Departmental Disciplinary Committee. The Committee sent respondent a copy of the doctor's complaint on December 22, 1992. Respondent did not submit an answer. The Committee sent respondent a second notice on January 20, 1993.

In his answer dated April 14, 1993, respondent told the Committee that his delay in answering and producing the requested documents was due to his being out of the country in October and November 1992 and to health problems in February 1993. He also stated that he would comply with the doctors' requests to turn over records within the next week. He did not inform the Committee at that time that he had not prepared or filed the Form 5500s for the profit-sharing plans.

Respondent did not turn over any records until he met with Dr. Kalayjian, Mr. Michalski, and the doctor's accountant on May 20, 1993 at the doctor's office in Connecticut. There respondent provided information and documents pertaining to the pension plans in effect before 1988, but did not provide any of the requested information or documents for the subsequent profit-sharing plans. Nor did respondent reveal at the meeting that he had failed to prepare and file the Form 5500s; instead he falsely represented that he had prepared the 5500s and would provide them with copies.

Respondent testified, contrary to Mr. Michalski's claims, that he did not represent at the May 20, 1993 meeting that he had prepared and filed the 5500s. He asserts that he asked the accountant for documents needed to complete the 5500s and told Mr. Michalski that he needed the documents for that precise purpose. Thus, he asserts that Mr. Michalski and the accountant should have been aware as of that date that he had not filed the 5500s. Furthermore, respondent claims that he called the accountant five days later and inquired about the documents he had requested at the meeting, which the accountant had promised to provide. On or about June 11, 1993, respondent received a note from the accountant stating that he was "slowly gathering" the requested documents. Meanwhile, respondent failed to respond to another request by Mr. Michalski on May 26, 1993 for copies of the executed profit-sharing agreements.

On July 16, 1993 at the request of staff counsel for the Departmental Disciplinary Committee, respondent appeared at the Committee offices for a meeting at which he was to produce the requested documents, including the 5500s. Respondent produced only the 1988 Profit-Sharing Agreements and the 1989 Profit-Sharing Plan, which he had also mailed to Mr. Michalski on or about the day before, July 15. Respondent falsely represented to staff counsel that he had filed the requested Form 5500s and promised to produce copies on July 19, 1993. Staff counsel immediately sent respondent a follow-up letter dated July 16, 1993 confirming his statement; respondent did not deny at that time the accuracy of the statements contained in the letter.

Subsequently, when respondent failed to produce the documents on July 19, 1993, the Committee served him with a subpoena duces tecum requiring the production of all original files in his possession or control relating to the doctors' pension and/or profit-sharing plans. A series of adjournments of the original July 21, 1993 return date followed.

On September 13, 1993, respondent finally appeared, with counsel, for deposition at the Committee's offices. He produced copies of incomplete 5500s for the profit-sharing plans, which he had prepared but not filed sometime after August 30, 1993. To this point he had advised neither his clients nor the Committee that he had failed to prepare or file such forms.

Based upon the evidence presented the Hearing Panel found that all of the charges were sustained; they then heard evidence in mitigation.

Respondent, 66 years old, has never been privately or publicly disciplined in 40 years of legal practice and in 29 years of practice as a certified public accountant no complaint has ever been filed against him. He lives in Guilford, Connecticut, where he is active in community affairs and enjoys a fine reputation, although his character witnesses admitted that they were unaware before their appearances of the nature of the charges against respondent. Respondent is active in several professional associations. Respondent stressed that his actions were not motivated by venality or financial gain, he received no fees from complainants after 1988, that this was an isolated case, and that in the end, he attempted to remedy his neglect by offering to help prepare the 5500 forms but was thwarted by complainants' accountant and bookkeeper.

The centerpiece of respondent's mitigation evidence was the

testimony of his psychiatrist whom he had been seeing since August 1993. According to Dr. Harold Bronheim, respondent suffers from an "obsessive compulsive personality disorder". The symptoms include indecisiveness and preoccupation with minutiae and unimportant details which in turn lead to procrastination, delay and, at times, failure to complete work in timely fashion. Dr. Bronheim cited examples in respondent's personal life which substantiated his diagnosis and opined that the symptoms were the cause of respondent's failure to properly execute his professional responsibilities. He noted that respondent had made substantial progress while under treatment.

The Hearing Panel concluded that respondent should be suspended from the practice of law for nine months for his admitted neglect and more importantly for his evasion and lack of cooperation with the Committee and the complaining clients. The misconduct involving the false acknowledgment of clients' signatures was considered a separate basis for serious discipline. His prior clean record and the lack of venal or financial motive were considered to be mitigating circumstances, but the psychiatric evidence was not.

We find that there is ample support in the record to sustain the Hearing Panel's findings as to all of the charges.

Regarding the matter of sanctions, we are of the opinion that a period of suspension is warranted here, since it has been our practice where we find neglect of legal matters combined with other misconduct or prior disciplinary record, e.g., *Matter of Fries* (38 AD2d 404 [neglect of a personal injury action, failure to cooperate with the Committee, unblemished disciplinary record for over 35 years—one-year suspension imposed]), *Matter of Hayman* (123 AD2d 240 [neglect of a criminal appeal despite assurance to Committee it would be done, prior admonition, personality disorder considered in mitigation—one-year suspension]) and *Matter of Hyman* (38 AD2d 511 [neglect of three matters, misrepresentations to conceal neglect, admission of wrongdoing but absence of venal intent 18-month suspension]).

The case at bar involves neglect of a legal matter, misrepresentations to clients and the Committee to cover the neglect, false acknowledgment of the clients' signatures on the profit-sharing agreements, and a failure to cooperate with the Committee. However, we believe that a suspension for a period of six instead of nine months is appropriate in this

instance, in view of the facts that the neglect was limited to one client matter; there was no venal intent; the false acknowledgment charge involved no dishonest intent and complainants decline to refute respondent's claims that it was intended to expedite the matter and that they consented to it; and respondent's record has been unblemished in 40 years of practice.

Accordingly, the Committee's petition is granted to the extent of confirming the Hearing Panel's findings of fact and conclusions of law. The report is disaffirmed insofar as it recommends that respondent be suspended from the practice of law for nine months and, instead, we suspend him for a period of six months. Respondent's cross motion is denied insofar as it seeks an order disaffirming in part the Hearing Panel's findings of fact and conclusions of law; it is granted to the extent that we disaffirmed, as stated *supra,* the recommended sanction.

SULLIVAN, J. P., ROSENBERGER, RUBIN, ROSS and WILLIAMS, JJ., concur.

Application granted to extent of confirming the Hearing Panel's findings of fact and conclusions of law, and disaffirming insofar as it recommends suspension for nine months; the cross motion is denied insofar as it seeks to disaffirm the Hearing Panel's findings of fact and conclusions of law; and respondent is suspended from practice as an attorney and counselor-at-law in the State of New York for a period of six months, effective August 28, 1995, and until the further order of this Court.