OPINION OF THE COURT
Per Curiam.
Respondent Martin S. Streit[1] was admitted to the practice of law in the State of New York in the First Judicial Department on June 27, 1956 under the name Martin Stanley Streit, and at all times relevant to this matter has maintained an office for the practice of law within the First Judicial Department.
In April 2008, the Departmental Disciplinary Committee served respondent with six charges. Charges one through three alleged that respondent’s failure to produce a client file in compliance with a subpoena and his overall failure to cooperate in an investigation, which necessitated two motions for immediate suspension, constituted conduct prejudicial to the administration of justice, in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5])„[2]
Charge four alleged that respondent’s failure to register with the Office of Court Administration for the period 2006-2007 was also conduct prejudicial to the administration of justice, in violation of DR 1-102 (a) (5). Respondent subsequently paid his registration fees, and this charge is now moot. Charge five alleged that respondent neglected a client matter, in violation of DR 6-101 (a) (3) (22 NYCRR 1200.30 [a] [3]).[3] Charge six alleged that all of the above-mentioned conduct adversely reflected on respondent’s fitness as a lawyer, in violation of DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).[4]
The Referee sustained all the charges and recommended a sanction of a suspension from the practice of law for at least *252 one year. The Hearing Panel agreed with the liability findings and also recommended a suspension of one year.
The Committee moves to confirm. Respondent requests dismissal of all the charges, or, in the alternative, a sanction no more severe than a public censure.
A Referee held hearings on June 13 and July 14, 2008. In January 1992, Audrey Holmes retained respondent in connection with an automobile accident that had occurred earlier that month. Respondent filed a personal injury action in January 1995. One of the defendants, Willie Williams, the driver of the car in which Holmes was a passenger, married her after the commencement of the action but died in 1999. By order dated September 21, 2004, the court directed Holmes to apply for the appointment of a personal representative for Williams; the order stated that failure to effectuate an appointment within 120 days would result in dismissal of the action.
In February 2005, two of the defendants moved to dismiss the action, based on plaintiffs failure to obtain appointment of a personal representative. One day before the motion’s return date, respondent requested an adjournment based on his engagement in a criminal trial on the return date; his relocation of offices in November 2004, during which his “file was misplaced”; and his hospitalization from February 3 to 9, 2005 for a-“serious injury” and his continuous outpatient treatment thereafter. By order entered March 31, 2005, the court dismissed the complaint upon default; respondent conceded at his deposition that he had defaulted. Respondent filed a notice of appeal to Appellate Term in July 2005. He never perfected the appeal, however, and in October 2009, one of the defendants moved to dismiss that appeal for failure to prosecute, which motion is apparently still pending. In November 2007, respondent filed a motion with the trial court to vacate the dismissal, which motion was adjourned a number of times and apparently remains unresolved.
Meanwhile, in February 2005, while the motion to dismiss the personal injury action was pending, Holmes filed a complaint with the Committee, stating that she had had contact with respondent only three times since the commencement of the action, and that he had not returned any of her numerous telephone messages after December 2004. By letter dated March 1, 2005, the Committee notified respondent of the complaint and requested a response within 20 days. After the deadline passed and the Committee warned that failure to respond could *253 result in immediate suspension, respondent requested a 30-day extension, on the ground that he had moved offices the prior November and was “finally forward[ed] the mail of the alleged complaint”; he also stated that he had “recently sustained a serious leg injury” for which he had been hospitalized for five days and thereafter treated as an outpatient.
That adjournment date and three subsequent ones passed without any communication from respondent, compelling the Committee to telephone him. When the Committee gave respondent yet another opportunity, he was advised over the telephone, and received confirmation in writing, that even if the client were to withdraw the disciplinary complaint, he would be required to submit an answer by October 31, 2005. Respondent obtained from the client a signed withdrawal dated October 24, 2005. On three occasions (November 1, December 9 and 27, 2005) the Committee reminded respondent that he was still obligated to submit an answer.
By subpoena dated March 6, 2006, respondent was directed to appear for deposition and produce his client files. At the deposition, respondent promised to supply an answer in four weeks, but then requested two more adjournments, claiming that he had moved offices again and suffered a hand injury. Eventually, the Committee moved for immediate suspension based on noncooperation, but withdrew the motion upon finally receiving his answer in October 2006.
Following respondent’s repeated failure to supply requested documents and information, the Committee served a second subpoena. At the ensuing deposition, respondent conceded that he had been “remiss” in not responding to the Committee’s requests, and promised to supply a chronology for the personal injury action, and a copy of a motion to vacate the dismissal of that action, which he planned to make by the end of the following month; he also stated that if he were unsuccessful in the action, he would personally pay the client the $10,000 she was seeking in damages.
Despite a followup letter from the Committee, respondent did not supply the requested information, and the Committee obtained another subpoena. A Committee investigator unsuccessfully attempted personal service twice at respondent’s office, and thereafter affixed and mailed a copy to his personal residence. Respondent did not appear for the deposition, and the Committee moved for immediate suspension for failure to cooperate. This Court denied the motion, with leave to renew if *254 respondent failed to produce his file at deposition. Upon being served with that order, respondent appeared for deposition and produced his files, which included a motion to vacate the dismissal of the personal injury action, dated November 21, 2007 and returnable December 20, 2007.
Respondent denied receiving the subpoena that had been affixed and mailed to his Bronx residence, claiming that he was staying with a friend in Queens over a four-month period because he needed assistance with his leg injury, and that he never had his mail forwarded during that time.
With respect to his handling of the personal injury matter, respondent testified that he had kept Holmes aware of the progress of her case by telephone and written communication; he asserted he had copies of cover letters sent to Holmes, but never produced them. He also claimed that “for a few years” she “disappeared” “down south,” although he could not recall the dates. His only excuse for not seeking a personal representative for the deceased party was that public administrators “don’t want to get involved” when the estate has little value, and therefore there should be no time limit on such applications. He conceded that he “should have moved faster” in prosecuting an appeal from the dismissal, and argued only that there is no time limitation in the Appellate Term. He stated that his 21/2-year delay in bringing a motion to vacate the dismissal was due to his heavy criminal caseload.
Respondent denied any willfulness in his nonresponsiveness to the Committee’s investigation, and asserted generally that other lawyers in the space he rented intercepted his mail. However, he only specifically denied receiving one fax, which was merely a memorialization of a telephone conversation he does not claim never took place. He expressly admitted to receiving multiple written requests from the Committee.
With the exception of the mooted registration charge, the Referee sustained all the charges, finding that the record established that respondent had neglected the client matter and, “either, willfully, or because of age and poor health failed to timely respond to various requests from the Committee’s staff attorneys.”
On September 10 and November 12, 2008, the Referee reconvened the matter for a hearing on sanctions. Respondent is an 82-year-old solo practitioner, who mostly handles indigent criminal and immigration cases, but also matrimonial and other civil matters. He served in the Navy during World War II, and *255 briefly held offices in a veterans’ organization, AMVETS. In 1990, he was admonished for neglecting a client matter (he waited five years before seeking a deposition and did not move to restore the case to the calendar until the disciplinary complaint), and lending a client money for purposes other than litigation expenses.
Two long-term clients (Roy Belaief and Marlene Liggett) and two more recent ones (Walid El Sayed and Meena Raguthu) testified on behalf of respondent that they were pleased with the quality of his work and the promptness of his responses.
Holmes testified that she had withdrawn her complaint upon respondent’s assurance “that he would do better with the case, but nothing changed.” She agreed to accept a $10,000 payment from respondent, who promised to send a certified check within 30 days.
The Referee recommended a suspension of at least one year. With respect to the neglect charge, the Referee had adjourned the matter to allow respondent to pay the complainant client $10,000, but there was no indication it had been tendered and no communication from respondent. The Referee therefore sustained the charge that respondent had neglected a client matter by failing to properly apply for the appointment of a personal representative in a personal injury action, which had caused the action to be dismissed.
Respondent’s failure to cooperate with the Committee, “which appears less willful than to be the consequence of general disorganization sometimes associated with advanced age,” had delayed the disciplinary proceedings by 2/% years. Even though respondent was 82 years old and had been a lawyer for more than 50 years, the Referee determined that a suspension of at least one year was warranted.
A Hearing Panel sustained the Referee’s findings on liability and recommended a one-year suspension. As summarized by the Hearing Panel:
“The Panel’s prior review of the extensive record demonstrated the Committee’s repeated efforts to gain the cooperation of Respondent. At the hearing Respondent continued to voice the selfsame excuses contained in his deposition and throughout the record, i.e., various physical problems and law office failures. He complained about the law firm from which he rented space, hostility by Committee staff, *256 bias he imputed to the Referee and [he] even criticized the trial judge for not affording him still more time. He showed no recognition of his responsibility to handle basic requirements of the practice of law—other than to say that he was a ‘poor businessman.’ Nor did he indicate any remorse for the needless expenditures of time and effort of Committee staff in simply gaining responses such as his answer to the complaint and copy of the case file at issue.”
The Hearing Panel took note of respondent’s 52 years of practice, his representation of needy clients, and his disciplinary history of only one prior admonition.
The Committee now moves to confirm the Hearing Panel’s report and requests a suspension of at least one year. Respondent requests dismissal of the charges or imposition of a sanction no more severe than a censure.
The record supports all of the charges. Respondent failed to comply with a court order to secure a personal representative for a deceased party or to seek an extension of time from the court, which had expressly stated that extensions would be granted for events beyond the plaintiffs control. Respondent’s argument that the court should not have placed any time restrictions in the first place is not a defense. He admittedly defaulted on the defense motion to dismiss (for his failure to apply for a personal representative). He waited four months to file a notice of appeal, which he never perfected, and he waited 2V2 years to seek vacatur in the trial court. While he claimed that he did communicate with his client, there is no evidence of the cover letters he purportedly wrote. The client’s withdrawal of the complaint, at respondent’s prompting, does not prevent the Committee from proceeding sua sponte. (See 22 NYCRR 605.6 [a].) Whether or not he paid the client $10,000 in settlement of her case is immaterial to liability. Indeed, even “the fact that a legal matter may not appear to be particularly meritorious does not justify its neglect” (Matter of Chasin, 183 AD2d 366, 368 [1992]).
Respondent’s failure to cooperate with the Committee was also established. Notwithstanding his generalized claims of intermittent health issues or problems in having mail forwarded, he admitted to receiving many of the written.communications, and he never denied the telephone communications with Committee staff. It took 19 months and a motion for interim suspen *257 sion for respondent to even submit an answer to the complaint. Thereafter, he repeatedly failed to produce requested documents until confronted with subpoenas and another motion for interim suspension. His pattern of delay was repeated in his submissions to the Referee and this Court.
We find that a six-month suspension is appropriate. While respondent’s many years of practice, and his military service cannot be overlooked, it is evident that he neglected the matter entrusted to him over a very lengthy period of time, and was less than candid and cooperative when the investigation was ongoing. A mere censure or admonition would serve to ignore the significance of respondent’s acts—which was the neglect of a matter entrusted to him by a client who had placed her faith in him (see e.g. Matter of Scharf, 213 AD2d 119 [1995]; Matter of Hubbert, 290 AD2d 122 [2002]).
Accordingly, the Committee’s motion should be granted to the extent of confirming the Hearing Panel’s report with respect to liability as to charges one through three, five and six, and disaffirming the recommended sanction, and suspending respondent from the practice of law for six months.
Tom, J.P, Saxe, Sweeny, Nardelli and Catterson, JJ., concur.
Respondent suspended from the practice of law in the State of New York for a period of six months, effective the date hereof.

. Respondent is proceeding pro se.

. Under the newly promulgated Rules of Professional Conduct, effective April 1, 2009, the provision has been renumbered rule 8.4 (d) (22 NYCRR 1200.0) . Failure to cooperate with the Committee is deemed conduct prejudicial to the administration of justice. (See Matter of Blumrosen, 253 AD2d 239 [1999].)

. Renumbered as Rules of Professional Conduct rule 1.3 (b) (22 NYCRR 1200.0) .

. Renumbered as Rules of Professional Conduct rule 8.4 (h) (22 NYCRR 1200.0).